1   Kimberly D. Howatt (SBN 7032)
    khowatt@gordonrees.com
2   GORDON & REES LLP
    101 W. Broadway, Suite 2000
3   San Diego, CA  92101
    Tel (619) 696-6700 / Fax (619) 696-7124
4
    William M. Rathbone (*will comply with LR IA 10-2 within 2 days*)
5   wrathone@gordonrees.com
    GORDON & REES LLP
6   101 W. Broadway, Suite 2000
    San Diego, CA  92101
7   Tel (619) 696-6700 / Fax (619) 696-7124

8   Attorneys for Plaintiff EVERGREEN RESEARCH AND MARKETING, LLC

9                **UNITED STATES DISTRICT COURT**

10              **SOUTHERN DISTRICT OF NEVADA**

11  EVERGREEN RESEARCH AND MARKETING,        )   CASE NO.
    LLC, A California limited liability company )
12                                            )   **COMPLAINT FOR:**
                                              )
13                        Plaintiff,          )   **(1) FEDERAL TRADE DRESS**
                                              )   **INFRINGEMENT AND FALSE**
14         vs.                                )   **DESIGNATION OF ORIGIN**
                                              )   **[15 U.S.C. § 1125(a)];**
15  MYSTICAL DISTRIBUTING CO., LTD, a         )
    Canadian limited partnership, and DOES 1-10, )   **(2) COMMON LAW TRADE DRESS**
16  inclusive,                                )   **INFRINGEMENT;**
                                              )
17                        Defendants.         )   **(3) FEDERAL TRADE DRESS**
                                              )   **DILUTION**
18                                            )
                                              )   **(4) UNJUST ENRICHMENT;**
19                                            )
                                              )   **(5) ACCOUNTING;**
20                                            )
                                              )   **DEMAND FOR JURY TRIAL**
21                                            )   **[Fed.R.Civ. P. 38]**

22         Plaintiff Evergreen Research and Marketing, LLC ("Evergreen" or "Plaintiff") for its

23  complaint against Defendant Mystical Distributing Co. LTD ("Mystical" or "Defendant") and

24  DOES 1 through 10, inclusive, alleges as follows:

25                     **NATURE OF THE ACTION**

26         1.     This is an action for willful violations by Defendant of Evergreen's intellectual

27  property rights, which violations include trade dress infringement, and unfair competition, all

28  arising out of the production, importation, distribution, sale, and offer for sale by Defendant of

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

-1-

**Gordon & Rees LLP**
**101 West Broadway, Suite 2000**
**San Diego, CA  92101**

1  "knock-offs" of Evergreen's proprietary product called "SUPERBAND®", which is a wristband

2  that is an insect repellent that has distinctive packaging and marketing materials.  Except for the

3  replacement of "Bug Bracelet" where Plaintiff's product name, "SUPERBAND®," appears on

4  Plaintiff's packaging, both the distinctive packaging and marketing materials have been exactly

5  copied.

6  <u>**JURISDICTION AND VENUE**</u>

7  2.      This is an action for trade dress infringement, unjust enrichment and accounting

8  arising under Nevada common law.  The Court has subject matter jurisdiction over this matter

9  pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b).  The Court has supplemental jurisdiction over

10  the state law claims pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

11  3.      Venue is proper, *inter alia*, under 28 U.S.C. §§ 1391 and 1400 in that a substantial

12  part of the events giving rise to the claims occurred in this judicial district, and Defendant or its

13  agent(s) may be found in this judicial district.  Specifically without limitation, Defendant has

14  sold at past trade shows the subject infringing goods in this judicial district, and intends to sell

15  and offer for sale the subject infringing goods infringing goods in this judicial district, directly at

16  a trade show in Las Vegas, Nevada on March 1, 2015 and indirectly through Defendant's

17  website, through direct sales on Amazon.com and through third party online wholesalers.

18  Defendant infringed or continues to infringe Evergreen's intellectual property rights by, *inter*

19  *alia,* marketing its business in this judicial district utilizing Plaintiff's intellectual property.

20  4.      This Court has personal jurisdiction over the Defendant by virtue of its

21  conducting business in this judicial district through past trade shows, through a trade show set for

22  March 1, 2015, through their distributors and customers, through their contacts in this judicial

23  district, through business transactions in this judicial district, and through Defendant's delivery

24  into the stream of commerce in this judicial district the products accused herein of violating

25  Evergreen's intellectual property rights.

26  <u>**THE PARTIES**</u>

27  5.      Plaintiff, Evergreen, is an American-owned limited liability company at all times

28  relevant hereto organized and in good standing under the laws of California, with a principal

place of business in California at 2261 Rutherford Road, Carlsbad, California 92008.  Evergreen is a small, family-owned business that, since 2001, has engaged in the business of designing, manufacturing, marketing, and selling specialty products, such as the SUPERBAND® insect repellent wristband, on a worldwide basis including the United States.

6.     Defendant, Mystical, is a Canadian limited partnership, located at 6 Foster Stearns Road, Trenton, Ontario, Canada and doing business at trade shows in Nevada and selling products in the United States on Amazon.com.

7.     The identities of Does 1 through 10 are presently unknown to Plaintiff, but on information and belief said defendants are liable in whole or part for the matters alleged herein. Plaintiff will seek leave of court to add them by name when their identities are ascertained.

## ALLEGATIONS COMMON TO ALL CLAIMS

8.     Mystical was a former distributor of Evergreen's product in Canada through a Sales Distribution Agreement ("Agreement") (a copy of which is attached hereto as **Exhibit "A"**), who sold Plaintiff's product, "SUPERBAND®", in Canada.  After the Agreement expired, Defendant started selling the same product in nearly identical packaging that Plaintiff has been using for its product since approximately 2001.  Defendant has been selling its product under the name "Bug Bracelet" at trade shows in Las Vegas, Nevada and through internet retailers including Amazon.com for a retail price of $29.95 for 50 units.

9.     Defendant has copied, reproduced, sold, offered for sale, publicly displayed, distributed, imported and arranged for the manufacturing of the product which infringes Evergreen's intellectual property as alleged below.  Attached hereto as **Exhibit "B"** is a photograph of a specimen of the infringing product called "Bug Bracelet" and its packaging. Attached hereto as **Exhibit "C"** is Evergreen's proprietary wrist band, called "SUPERBAND®" and its distinctive packaging.  Except for the name of the products, the packaging is nearly identical.  Attached hereto as **Exhibit "D"** is a photo of the marketing banner used at a past Las Vegas, Nevada trade show by Plaintiff for its "SUPERBAND®" product.  Attached hereto as **Exhibit "E"** is the marketing banner used by Defendant for its "Bug Bracelet" product at a past Las Vegas trade show.  Again, except for the product name, the marketing banners are nearly

1   identical.

2   **Evergreen's Intellectual Property Rights At Issue**

3        10.     By virtue of Evergreen's extensive design, development, sales, and marketing

4   activities regarding its insect repellent wrist band products, Evergreen has amassed a substantial

5   portfolio of intellectual property rights including numerous trademarks, identifying trade dress,

6   and other source identifiers.  Intellectual property is of particular importance in this niche insect

7   repellent wrist band industry, which is an industry heavily dependent on design, packaging, and

8   graphic presentation.  These intellectual property rights are of incalculable value to Evergreen's

9   business, including its ability to maintain goodwill with respect to its product line and customers.

10  Evergreen's careful maintenance of its intellectual property rights is an important factor in the

11  success of its business over the past thirteen years.

12  **Evergreen's Wristband Insect Repellent SUPERBAND®**

13       11.     As discussed above, one of Evergreen's products is its SUPERBAND®, which

14  Evergreen has trademarked and sold in the United States and in this judicial district through the

15  various established channels of trade, including mass market retailers such as Amazon, Walmart

16  and specialty retailers, since at least as early as 2001.  To date, Evergreen has spent over

17  $1,000,000.00 for design, testing and production of the "SUPERBAND®" wristbands, and

18  $100,000 to get state approval for the sale of this product in 36 states.  Evergreen's investment

19  has resulted in the sales from 2001 through the present of more than 50,000,000.00

20  SUPERBAND® units world-wide, with gross revenue in excess of $15,000,000.00.

21  **Trade Dress Protection for Evergreen's "SUPERBAND®" Wristband,**
22  **Marketing Banner and Product Packaging**

23       12.     Evergreen has proprietary trade dress rights in the design of the SUPERBAND®

24  product.  The trade dress of the product is arbitrary, non-functional and has acquired

25  distinctiveness as a result of Evergreen's marketing and sales of the SUPERBAND® product.

26  This acquired distinctiveness creates a strong secondary meaning in the minds of the consuming

27  public in that it associates the trade dress of the product with Evergreen.  Accordingly, the trade

28  dress of the product is an important source identifier for the SUPERBAND® product.

-4-

13.     Evergreen also has proprietary trade dress rights in the packaging of its SUPERBAND® product and banners used at trade shows.  The trade dress of the packaging and marketing banners are inherently distinctive, arbitrary and non-functional.  As a result of the design elements in this trade dress, and Evergreen's marketing and sales activities, the SUPERBAND® packaging and marketing banners have acquired further distinctiveness.  Such distinctiveness creates a strong secondary meaning in the minds of the consuming public in that it associates such trade dress with Evergreen.  The trade dress of the product packaging and marketing banners is therefore also an important source identifier for the SUPERBAND® wristband.

14.     Evergreen also has proprietary trade dress rights in the unique combination of the distinctive coiled, flexible and yellow SUPERBAND® wristband product and its very distinctive clear plastic with red and black lettered product description and packaging.  The trade dress of this combination is inherently distinctive, arbitrary and non-functional.  As a result of the design elements in this trade dress, and Evergreen's marketing and sales activities, the SUPERBAND® wristband has acquired further distinctiveness.  Such distinctiveness creates a strong secondary meaning in the minds of the consuming public in that it associates such trade dress with Evergreen.  The trade dress of the combination of the SUPERBAND® wristband, marketing banners and the product packaging is therefore an important source identifier for the SUPERBAND® product.

15.     The distinctive design of the SUPERBAND® product includes, but is not limited to, the following features:

(a)     A bright yellow, flexible coiled wristband which has distinct natural oils in it that have been deemed minimal risk pesticides by the US Environmental Protection Agency.

16.     The distinctive design of the SUPERBAND® product packaging includes, but is not limited to, the following features:

(a)     Plastic clear package of the bright yellow product, distinctly visible in the clear plastic package, which states the following language in bright red and black letters: REPELS MOSQUITOS (red), Just Slip It On (red), INSECT REPELLING (black), SUPERBAND® (red),

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

1    and Contains 1 Insect Repelling Wristband (black).  (See **Exhibit C**).

2         (b)    The most prominent colors to the images and text on the front face of the package

3    are red and black with the yellow product distinctly visible in the packaging.

4         (c)    Plaintiff's marketing banner contains the phrases "TWICE THE POWER, HALF

5    THE PRICE" (in bright red at the top of the banner), "INSECT REPELLING", product name in

6    the center, "REPELS MOSQUITOS & KEEPS BUGS AWAY" (in bright yellow in the middle

7    of the banner), "THE WORLDS #1 SELLING INSECT REPELLING WRISTBAND" (in bright

8    red at the bottom of the banner).  (See **Exhibit D**)

9         17.    These arbitrary and nonfunctional design elements, among others, both

10   individually and in combination, constitute Evergreen's proprietary trade dress in the

11   SUPERBAND® wristband.  Plaintiff's marketing banner and packaging are inherently

12   distinctive; operate as source identifiers for Evergreen's SUPERBAND® wristband and make the

13   insect repellent wristband unusual and memorable.

14   **Infringement by Defendant of Evergreen's SUPERBAND® insect repellent Wristband**

15        18.    Defendant, and each of them, has intentionally infringed the aforementioned

16   intellectual property rights of Evergreen through sale and offer for sale of a wristband which

17   looks exactly like Evergreen's SUPERBAND® insect repellent wristband, banner and

18   packaging, and which are all, except for the names of the product, virtually identical copies of

19   Evergreen's proprietary SUPERBAND® wristband product, banner and packaging.  (See

20   **Exhibits B, C, D and E**)  Defendant's conduct in copying Evergreen's trade dress was done

21   intentionally to misappropriate and benefit from the goodwill developed by Evergreen in the

22   insect repellent wristband market.

23        19.    Defendant's wristband, marketing banner and packaging incorporates each and

24   every one of the arbitrary design elements and trade dress of Plaintiff's wristband, marketing

25   banner and packaging, all in virtually the identical positions.

26        20.    Defendant has undertaken this copying deliberately in order to misappropriate

27   Evergreen's goodwill in the insect repellent wristband market and to confuse consumers into

28   believing the product of Mystical is made by Evergreen.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

21.     As a result of Defendant's misappropriation of Evergreen's product design and trade dress, the overall commercial impression of the Defendant's Bug Bracelet is confusingly similar to that of Evergreen's product SUPERBAND® wristband.  Defendant's infringing Bug Bracelet wristband, banner and packaging is highly likely to confuse the ordinary consumer into purchasing the Bug Bracelet wristband, believing it to be Evergreen's SUPERBAND® wristband.  Defendant, the former distributor in Canada of Plaintiff's SUPERBAND®, has willfully and intentionally designed its product, packaging and marketing materials for the purpose of confusing consumers...

22.     It is unlikely consumers will distinguish Defendant's infringing "Bug Bracelet" wristband from Evergreen's "SUPERBAND®" wristband,  particularly on an initial or casual examination of an insect repellent wristband by an ordinary consumer.

23.     Both Evergreen's SUPERBAND® and Defendant's Bug Bracelet are marketed to consumers looking for wristband insect repellent, and sold through the same channels of trade, i.e., for the retail market through mass marketers and online retailers like Amazon.com, and for the wholesale market through trade shows.  When you search "Insect Repelling Superband" on amazon.com, "Bug Bracelet" shows up with Plaintiff's product.  (A copy of the screenshot is attached as **Exhibit "F"**)

24.     Even if the Defendant didn't design or manufacture the product, marketing banner or packaging and merely purchased the infringing wristband from a third party manufacturer, through its offer for sale to the general public, Defendant, and its officers, directors, and shareholders are liable for contributory and vicarious infringement under *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996) and related cases.

25.     Plaintiff is informed and believes and thereon alleges that Defendant's infringing "Bug Bracelet" wristband is of inferior quality, and to the best of Plaintiff's knowledge, has never been approved by any states in the United States.  Accordingly, Defendant's product could pose a safety hazard, which could be particularly damaging to Evergreen and its hard-won reputation for quality and safety.

/ / /

## FIRST CLAIM FOR RELIEF
**False Designation of Origin and Trade Dress Infringement**
**(15 U.S.C. § 1125(a)) (Against Defendant)**

26.     Evergreen repeats and realleges the allegations contained in Paragraphs 1 through 25 above.

27.     Defendant's actions of designing, manufacturing, packaging, selling, or distributing infringing knock-offs of Evergreen's SUPERBAND® wristband, marketing banner and packaging in interstate commerce, without consent of Evergreen, constitutes false designation of origin and trade dress infringement, and has caused and continues to cause a likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation, and/or connection in the minds of the public.

28.     Defendant's false designation of origin and trade dress infringement in interstate commerce has infringed Evergreen's trademark rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

29.     By reason of the foregoing, Evergreen has been injured in an amount not yet fully determined, but believed to be in excess of $500,000.00.  In addition, as a result of Defendant's acts of trade dress infringement, Evergreen has suffered and will continue to suffer irreparable harm, and Evergreen has no adequate remedy at law with respect to this injury.  Unless the acts of trade dress infringement are enjoined by this Court, Evergreen will continue to suffer a risk of irreparable harm.

30.     Defendant's actions have been knowing, intentional, wanton, and willful, entitling Evergreen to damages, treble damages, profits, attorney's fees, and the costs of this action.

## SECOND CLAIM FOR RELIEF
**Trade Dress Infringement Under the Common Law**
**(Against Defendant)**

31.     Evergreen repeats and realleges the allegations contained in Paragraphs 1 through 30 above.

32.     Defendant's actions of designing, manufacturing, packaging, selling, or distributing infringing knock-offs of Evergreen's SUPERBAND® wristband, marketing banner and packaging without consent of Evergreen, constitutes false designation of origin and trade

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

dress infringement, and has caused and continues to cause a likelihood of confusion, mistake, and deception as to source, sponsorship, affiliation, and/or connection in the minds of the public.

33.      Defendants' false designation of origin and trade dress infringement has infringed Evergreen's trade dress rights in violation of the common law.

34.      By reason of the foregoing, Evergreen has been injured in an amount not yet fully determined, but believed to be in excess of $500,000.00.  In addition, as a result of Defendant's acts of trade dress infringement, Evergreen has suffered and will continue to suffer irreparable harm, and Evergreen has no adequate remedy at law with respect to this injury.  Unless the acts of trade dress infringement are enjoined by this Court, Evergreen will continue to suffer a risk of irreparable harm.

35.      Defendant's actions have been knowing, intentional, wanton, and willful, entitling Evergreen to damages, treble damages, profits, attorney's fees, and the costs of this action.

### THIRD CLAIM FOR RELIEF
**Federal Trade Dress Dilution**
**(15 U.S.C. § 1125(c) (Against Defendant)**

36.      Evergreen repeats and realleges the allegations contained in Paragraphs 1 through 35 above.

37.      Evergreen's SUPERBAND® wristband, marketing banner and packaging trade dress are non-functional and famous within the meaning of 15 U.S.C. § 1125(c), and were famous prior to Defendant's conduct alleged herein.

38.      Defendant's marketing, sales and distribution of the infringing "Bug Bracelet" wristband and packaging impairs the distinctiveness of Evergreen's famous SUPERBAND® wristband, marketing banner and packaging trade dress.  This dilution by blurring was done with the willful intent to trade on Evergreen's reputation and/or to cause dilution of Evergreen's trade dress.

39.      Defendant's marketing, sales and distribution of the infringing Bug Bracelet, marketing banner and packaging tarnishes Evergreen's famous SUPERBAND® wristband, marketing banner and packaging by associating in the minds of consumers an inferior quality insect repellent wristband with Evergreen's famous trade dress.  This dilution by tarnishment

was done with the willful intent to trade on Evergreen's reputation and/or to cause dilution of Evergreen's trade dress.

40.     Defendant acted in knowing and willful violation, or in reckless disregard, of Plaintiff's rights under 15 U.S.C. § 1125(c).

41.     Evergreen has no adequate remedy at law, and if Defendant is not enjoined, then Plaintiff will suffer irreparable harm and injury to its goodwill and reputation.

42.     Evergreen is entitled to recovery of monetary damages, including, but not limited to, actual damages, treble damages, attorneys' fees and costs.

<div style="text-align:center">

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Defendant)**

</div>

43.     Evergreen repeats and realleges the allegations contained in Paragraphs 1 through 42 above.

44.     Defendant's acts of misappropriation and illegal use of Evergreen's respective intellectual property rights and valuable goodwill associated with the rights have resulted in Defendant being unjustly enriched at Evergreen's expense.

45.     Evergreen has invested heavily in the advertisement, promotion and building of goodwill related to the aforementioned intellectual property.

46.     Evergreen is therefore entitled to restitution of all ill-gotten profits related to the aforementioned intellectual property rights that have been retained by Defendant.

<div style="text-align:center">

**FIFTH CLAIM FOR RELIEF**
**Accounting**
**(Against Defendant)**

</div>

47.     Evergreen repeats and realleges the allegations contained in Paragraphs 1 through 46 above.

48.     Evergreen alleges that Defendant's improper use of Evergreen's intellectual property rights as alleged above has resulted in Defendant being unjustly enriched at Plaintiff's expense and at no cost to Defendants.

49.     Defendant has retained an unknown amount of monies that rightfully belongs to Evergreen.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

<div style="text-align:center">COMPLAINT FOR DAMAGES</div>

50.     Evergreen is therefore entitled to an accounting of all profits gained by Defendant's illegal use of Evergreen's intellectual property.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor, and against Defendant, as follows:

1.     Judgment that Evergreen's proprietary trade dress in Evergreen's SUPERBAND® wristband, marketing banner and packaging have been infringed by Defendant;

2.     Preliminary and permanent injunctions, against Defendant and those additional parties specified in Federal Rule of Civil Procedure 65(d), against Defendant's continued infringement of Evergreen's trade dress for Evergreen's  wristband, marketing banner and packaging, preventing their continued use as a false designation of origin, and preventing their continued infringement of Evergreen's trade dress;

3.     An accounting of profits and damages resulting from Defendant's trade dress infringement and trebling and/or enhancement of such damages as an exceptional case because of the knowing, intentional, willful, and wanton nature of Defendant's conduct; specifically:

(a)     On Evergreen's trade dress infringement claim, an award to Evergreen of (i) an amount equal to the actual damages suffered by Evergreen as a result of the infringement of its proprietary trade dress; (ii) an amount equal to the profits earned by Defendant as a result of their infringing sales; (iii) an amount equal to three times the monetary award assessed in view of Defendant's willful and wanton infringement; (iv) pre-judgment interest and post-judgment interest; (v) an amount equal to Evergreen's reasonable attorney's fees, as an "exceptional" case under 15 U.S.C. § 1117;

(b)     On Evergreen's trade dress dilution claim, an award to Evergreen of (i) an amount equal to the actual damages suffered by Evergreen as a result of the dilution of its proprietary trade dress; (ii) an amount equal to the profits earned by Defendant as a result of their diluting sales; (iii) an amount equal to three times the monetary award assessed in view of Defendant's willful and wanton dilution; (iv) pre-judgment interest and post-judgment interest; (v) an amount equal to Evergreen's reasonable attorney's fees, as an "exceptional" case under 15 U.S.C.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

§ 1117.

       4.     An award of punitive damages for intentional and willful acts;

       5.     An award of interest, attorney's fees, and costs; and

       6.     Such other and further relief as the Court deems just and equitable under the circumstances.


Dated:  February 23, 2015                Respectfully submitted,

                                      GORDON & REES LLP


                                By  */s/Kimberly D. Howatt*
                                    Kimberly D. Howatt
                                    Attorneys for Plaintiff
                                    EVERGREEN RESEARCH AND
                                    MARKETING, LLC

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Evergreen hereby demands its right to a jury trial on all issues triable to a jury.


Dated:  February 23, 2015                          Respectfully submitted,

                                                   GORDON & REES LLP


                                                   By  */s/Kimberly D. Howatt*
                                                       Kimberly D. Howatt
                                                       Attorneys for Plaintiff
                                                       EVERGREEN RESEARCH AND
                                                       MARKETING, LLC

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

1103283/22481217v.1

-13-

COMPLAINT FOR DAMAGES

# EXHIBIT A

Evergreen Research & Marketing LLC
Sales Distribution Agreement

This agreement is made and entered into as of April 18, 2012 by and between Evergreen Research and Marketing LLC located in Carlsbad, Ca. And Mystical Distributing Co. LTD located in Trenton, Ontario and is construed to be in accordance with the laws of California.

Witnesseth:

1.  Evergreen Research will hereinafter be referred to as the COMPANY.

2.  Mystical Distributing Co. LTD will hereinafter be referred to as the DISTRIBUTOR.

3.  The Company hereby assigns Distribution rights for the sales of the Company's products to the Distributors agreed to accounts.

        A) Products included are as defined in Exhibit A.
        B) Accounts and territory are as defined in Exhibit B.
        C) Minimum Performance Requirements Exhibit C.

4.  The Distributor shall use their best efforts and devote such time as may be reasonably necessary to promote and sell the Company's products. Furthermore, the Distributor agrees to report comments from the field on the Company's products, advise as to competitive conditions, perform it's activities within the Company's policies and sell in a manner which reflects favorably upon the Company. During the term of this Agreement, Distributor will not, directly or indirectly, through any other person or entity, sell or distribute any products which are similar to or competitive with the Products provided by the Company.

5.  The Distributor shall meet or exceed the minimum performance requirements as defined in Exhibit C. Failure to meet the minimum performance requirements shall be grounds for termination or re-negotiation of this agreement.

6.  The Distributor shall pay all costs and expenses in connection with the performance of his duties as a Distributor for the Company.

7.  Compensation – Distributor is free to determine their own mark-up on Companies goods.

8.  Distributor shall use their best efforts to promote and market the product throughout the territory. The distributor will maintain personnel, facilities, and inventory sufficient to meet the needs of potential customers.

9.  The contract is by no means a license and Distributor shall not acquire any proprietary interest in any of the Company trademarks, insignia or other trademarks.

10.  Unless sooner terminated as set forth below, this agreement shall extend for a period of three years, beginning April 18, 2012 and ending April 18, 2015 and may be renewed for the same time period upon agreement of the parties. Either party may terminate this agreement with thirty days written notice to the other party, in the event of a material breach of any term of this agreement.

11.  All orders are subject to acceptance by the Company.

12.  Both parties agree to not discuss or disclose terms or details of this contract with any third party. Both parties agree to not disclose information of a confidential or proprietary nature and acknowledge that such information is supplied by each party to the other party in strict confidence.

13.  The Distributor is to have no right or authority to assume or create any obligation of any kind expressed or implied to make any representation, guarantee, or warranty on behalf of or binding upon Company.

14. The Distributor will be responsible for credit risks and collections.  The Distributor agrees to advise the Company promptly of any significant changes in the credit status of accounts of which he has knowledge and or distribution.

15. Nothing in this agreement shall be construed or constitute the distributor as partner or employee of the Company nor shall either party have any authority to bind the other in any respect, it being intended that each shall remain an independent contractor responsible only for his own actions.

16. The Company agrees to carry product liability insurance in the United States of America

17. The Company will forward a Certificate of Insurance to the Distributor upon the start of this agreement and annually thereafter.

18. The Company will furnish product training to the Distributor as mutually agreed upon between the two parties.

19. The Company shall furnish the Distributor with a nominal quantity of samples, catalogs, literature and any other material necessary for the effective promotion and sale of the Company's product.  The Company will provide all computer artwork for distributor to produce literature as Distributor sees fit.

In witness whereof the parties indicate their agreement by signing below:

Offered by:                                                  Accepted by:
Evergreen Research and Marketing LLC                         Mystical Distributing Co. LTD

_____                                    _____
Robert Albert                                                Mark Phillips
Evergreen Research & Marketing LLC                           Mystical Distributing Co. LTD

_____                                    _____
Date                                                         Date

## EXHIBIT A

Product lines authorized by Company to Distributor are:
Insect Repelling SuperBand
Insect Repelling BugButton
Insect Repelling Mosquito Eliminator

## EXHIBIT B

Territory authorized is defined as:
Canada (the entire country)

## EXHIBIT C

Minimum Performance Requirements:
1st year One  40' Container
2nd year Two  40' Containers
3rd year Two ½ 40' Containers

_____                                    _____
Robert Albert                                                Mark Phillips
Evergreen Research & Marketing LLC                           Mystical Distributing Co. LTD

_____                                    _____
Date                                                         Date

EXHIBIT A
Page 2

# EXHIBIT B







## DIRECTIONS FOR USE:
Simply slide the BugBracelet™ on your wrist or ankle and enjoy a bug free day. Each BugBracelet lasts up to 200 hours after the seal is broken.

**Active Ingredients:**
Geraniol Oil - 15%
Lemongrass Oil - 5%
Citronella Oil - 2%

**Inert Ingredients:**
Polyethylene, Zinc Iron Oxide*,
Zinc Oxide   Zinc Stearate*,
Ultramarine blue*, Calcium Carbonate* - 78%

Total - 100%
Net Weight - 7 grams

Precautionary Statements
Not intended for children
under 3. In the rare case of
irritation discontinue use, and
wash area with mild soap and
water.
Use with adult supervision

*Color is dependent on
various ratios of components

www.bugbracelet.com
Made In China
This product is exempt from registration with the federal EPA under section 25 (b) of FIFRA

7   77319 10027   0

# EXHIBIT C



**REPELS MOSQUITOS**

**JUST SLIP IT ON!**

**INSECT REPELLING**

**SUPER BAND**

**CONTAINS 1 INSECT REPELLING WRISTBAND**

Directions for use: Simply slide the SuperBand® on your wrist or ankle. Each wristband lasts up to 200 hours after the seal is broken.

Active Ingredients
Geraniol Oil ........................................... 15%
Lemongrass Oil ........................................ 5%
Citronella Oil ......................................... 2%

Inert Ingredients:
Polyethylene, Zinc Iron Oxide*,
Zinc Oxide*, Zinc Stearate*,
Ultramarine Blue*, Calcium Carbonate* ...... 78%
Total ................................................. 100%
Net. wt ................................................. 7g

Precautionary Statements. Not intended for children under 3. In the rare case of irritation, discontinue use and wash area with mild soap and water. Use with adult supervision.

*Color is dependent on various ratios of components.

This product is exempt from registration with the federal EPA under section 25 (b) of FIFRA.



6   52435 39001   2

EXHIBIT C
Page 4



Directions for use: Simply slide the SuperBand® on your wrist or ankle. Each wristband lasts up to 200 hours after the seal is broken.

Active Ingredients:
Geraniol Oil ............................................ 1.5%
Lemongrass Oil ....................................... .5%
Citronella Oil .......................................... 2%

Inert Ingredients:
Polyethylene, Zinc Iron Oxide*,
Zinc Oxide*, Zinc Stearate*,
Ultramarine Blue*, Calcium Carbonate*...... 78%
Total ..................................................... 100%
Net. wt. ................................................ 7g

Precautionary Statements: Not intended for
children under 3. In the rare case of irritation,
discontinue use and wash area with mild
soap and water. Use with adult supervision.

*Color is dependent on
various ratios of components

This product is exempt from registration with
the federal EPA under section 25 (b) of FIFRA.



6    52435 39001    2

EXHIBIT C
Page 5

# EXHIBIT D



EXHIBIT D
Page 5

# EXHIBIT E



TWICE THE POWER HALF THE PRIC
INSECT REPELLING
BUG BRACELET
REPELS MOSQUITOS & KEEPS BUGS AWAY
THE WORLDS #1 SELLING
BUG BRACELET
SOAR TO NEW PROFIT HEIGHTS

# EXHIBIT F



# Evergreen Research SB39400 "SuperBand" Insect Repelling Wrist Band (Pack of 10)
by Evergreen Research

**$4.85** $19.99   Add-on Item
Only 12 left in stock - order soon.

More Buying Choices
**$3.00** new (28 offers)

★★★★☆ ▾ 257

FREE Shipping on orders over $35

**Product Features**
Pack of 10 SuperBand Insect Repelling Wrist Band

**Health & Personal Care:** See all 16 items

# Evergreen Research SuperBand Insect Repellent 10-Pack
by Evergreen Research

**$7.59** $14.99  √Prime
Get it by **Tuesday, Feb 24**

More Buying Choices
**$1.99** new (15 offers)

★★★★☆ ▾ 142

FREE Shipping on orders over $35

**Product Description**
... staying pest free with a SuperBand Insect repellent. The SuperBand ....

**Patio, Lawn & Garden:** See all 11 items

# Evergreen Research SuperBand Insect Repelling Wrist Band 40 Pack
by Evergreen Research

**$21.32** $44.99  √Prime
Get it by **Tuesday, Feb 24**

More Buying Choices
**$21.29** new (6 offers)

★★★★★ ▾ 1

FREE Shipping on orders over $35

**Product Features**
Pack of 10 SuperBand Insect Repelling Wrist Band

**Health & Personal Care:** See all 16 items

# 50 BUG BRACELETS JUST SLIP IT ON & EACH BRACELET LAST UP-TO 200 HOURS, REUSABLE, WATERPROOF, NON-TOXIC INSECT...
by Mystical

**$21.75**

**Product Features**
... WATERPROOF, NON-TOXIC INSECT REPELLING MOSQUITOS, REPELS ...

**Sports & Outdoors:** See all 10 items

# Superband PREMIUM Insect Repellent Bracelet; Assorted Colors (25)
by Superband Premium

EXHIBIT F
Page 7